IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| SUZETTA CALZADA,<br><br>    Plaintiff,<br><br> v.<br><br>NEIMAN MARCUS GROUP, LLC FORMERLY, THE<br>NEIMAN MARCUS GROUP, INC; AND NEIMAN<br>MARCUS GROUP, LTD.,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 3:24-cv-494<br>)<br>)<br>)<br>)<br>)<br>) |

**EXHIBIT B**

**TO**

**NOTICE OF REMOVAL**

Summons and Complaint

# STATE OF NORTH CAROLINA

**Mecklenburg** County

In The General Court Of Justice
☐ District   ☒ Superior Court Division

| Name Of Plaintiff | |
|---|---|
| Suzetta Calzada | |

**CIVIL SUMMONS**

☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)**

| Address | | |
|---|---|---|
| 6302 Chimney Bluff Rd. | | |

| City, State, Zip | | |
|---|---|---|
| Lancaster, | SC | 29720 |

G.S. 1A-1, Rules 3 and 4

**VERSUS**

| Name Of Defendant(s) |
|---|
| Neiman Marcus Group, LLC fka Neiman Marcus Group, Inc. |
| Neiman Marcus Group, LTD. |

Date Original Summons Issued

Date(s) Subsequent Summons(es) Issued

## To Each Of The Defendant(s) Named Below:

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
|---|---|
| Neiman Marcus Group LLC fka Neiman Marcus Group, Inc. | Neiman Marcus Group, LTD |
| c/o CT Corporations Systems, Registered Agent | c/o CT Corporations Systems, Registered Agent |
| 160 Mine Lake Ct. Suite 200 | 160 Mine Lake Ct. Suite 200 |
| Raleigh,                                    NC        27615 | Raleigh,                                    NC        27615 |

⚠️ **IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!**

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles!**

**Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!**

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff) | Date Issued | Time |
|---|---|---|
| Suzetta Calzada | 4/10/2024 | 3:48:47 pm   ☐ AM  ☐ PM |
| | Signature | |
| 6302 Chimney Bluff Rd. | /s/ Andrew Yeaman | |
| Lancaster                          NC        29720 | ☒ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court | |

| ☐ ENDORSEMENT (ASSESS FEE) | Date Of Endorsement | Time |
|---|---|---|
| This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | | ☐ AM  ☐ PM |
| | Signature | |
| | ☐ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** *Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration and, if so, what procedure is to be followed.*

(Over)

| | |
|---|---|
| STATE OF NORTH CAROLINA )<br>COUNTY OF MECKLENBURG )<br> )<br> )<br>SUZETTA CALZADA, )<br> )<br> Plaintiff, )<br> )<br> )<br> )<br> )<br> v. )<br> )<br>NEIMAN MARCUS GROUP, LLC )<br>Formerly, The NEIMAN MARCUS )<br>GROUP, INC; and NEIMAN )<br>MARCUS GROUP, LTD. )<br>            Defendants. ) | IN THE GENERAL COURT OF JUSTICE<br>SUPERIOR COURT DIVISION<br>     CV_____<br><br><br><br><br>**COMPLAINT FOR DAMAGES AND<br>DEMAND FOR JURY TRIAL** |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended, for

Defendants' violations of Title VII and to provide appropriate relief to Plaintiff Suzetta Calzada.

As alleged with greater particularity below, directly and/or in the alternative, Defendants violated

Title VII when they discriminated against Plaintiff based on race and retaliated against Plaintiff.

In addition, Defendants violated the Age Discrimination in Employment Act (ADEA) with their

practices, policies and actions when taken against and applied to Plaintiff Suzetta Calzada.

## JURISDICTION, VENUE AND PARTIES

1.     The employment practices alleged to be unlawful were committed within the

jurisdiction of Mecklenburg County, North Carolina.

2.     Plaintiff, Suzetta Calzada, is a Black female, who is expressly authorized to bring

this action whereby all facts alleged occurred in Mecklenburg County, North Carolina.

3.     At all relevant times, Defendants, a Texas Corporation, operated a chain of luxury

department stores in North Carolina, including Neiman Marcus located at South Park Mall, 4400

Sharon Rd. Charlotte, NC 28211 (the "Facility"). According to the requisite registries,

1

Defendants' Registered Agent is CT Corporation Systems located at 160 Mine Lake Ct. Suite 200, Raleigh, NC 27615.

4.     Upon information and belief, the company's operations are conducted through its wholly owned subsidiary, Defendant Neiman Marcus Group, LLC, formerly The Neiman Marcus Group, Inc.

5.     At all times pertinent to this action, Neiman Marcus Group, Ltd., has been the parent company of Neiman Marcus Group, LLC, formerly The Neiman Marcus Group, Inc., and thus exercised reasonable control over Neiman Marcus Group, LLC/Inc., for which both entities have existed for the benefit and interest of the other and thus has not operated as an independent entity of the other. With respect to the decisions pertinent to Plaintiff's causes of action herein, Defendants Neiman Marcus Group, LLC (formerly The Neiman Marcus Group, Inc.) and Neiman Marcus Group, Ltd. have operated and acted as a single entity. Neiman Marcus Group, LLC (formerly The Neiman Marcus Group, Inc.) and Neiman Marcus Group, Ltd. are sometimes collectively referred to hereafter as "the Corporate Defendants."

6.     As it relates to Plaintiff's Causes of Action, the Corporate Defendants are sued alternatively, in their individual capacities as separate legal entities, and collectively, and should be held jointly and severally liable for the wrongful conduct alleged herein. Notwithstanding, all facts as applicable to any particular cause of action and taken throughout Plaintiff's complaint shall apply to any and all cause(s) of action, as applicable, with regard to headings, as if said facts are fully and actually set forth in each section hereto.

7.     At all relevant times, Defendants have continuously done business in the State of North Carolina and in Mecklenburg County, North Carolina and have continuously maintained at least fifteen (15) employees.

2

8.	Joint venture liability with respect to the Defendants and Defendants' predecessors in interest exists based on the nature of their relationship, joint venture(s) and actions.

9.	Upon information and belief, contractual obligations exist as between the Corporate Defendants, each of which acted in furtherance of protecting and advancing its interest.

10.	There is a sufficient nexus between Corporate Defendants to establish proper jurisdiction and liability on the claims herein and was Plaintiff's employer.

11.	Upon information and belief, Corporate Defendants through their actions, a web of agreements and/or corporate structures with various affiliated and unaffiliated services providers, shared ultimate responsibility and authority to exert control over Plaintiff and to direct the pay practices, employment policies and illegal discharge of Plaintiff as challenged and alleged in this Complaint.

12.	At all times pertinent to this action, Defendants have been a covered entity under Title VII.

13.	Defendants are vicariously liable for the actions of its employees, officers, management and other of its agents.

14.	Plaintiff seeks damages in sum sufficient that subject matter is properly vested in the Superior Court Division pursuant to N.C.G.S. § 7A-243.

## ADMINISTRATIVE PROCEDURES

15.	More than thirty (30) days prior to the institution of this lawsuit, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("Commission") alleging violations of Title VII and the ADEA by Defendants.

3

16.     On or about January 9, 2024, the Commission issued a right to sue letter to Plaintiff.

17.     All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

18.     Plaintiff began employment with Defendants on or about May 29, 2012 as a customer sales representative in the New Jersey location and transferred to the Charlotte Neiman Marcus in 2013, where she performed well and excelled as a sales professional until she was wrongfully terminated on or around March 14, 2023.

19.     Plaintiff is an African American female over 40 years old.

20.     Upon information and belief, Plaintiff was the only African American luxury sales representative in her department and was at least twenty (20) years older than Ms. Castonguay, a white female.

21.     In August 2022, Plaintiff, began being harassed by a younger white female co-worker, Marina Castonguay.

22.     Plaintiff already believed she was being treated less favorably than her white female co-worker when she reported this incident to management. And, management failed to investigate Plaintiff's complaint. Subsequently, two weeks after the incident, Plaintiff further inquired about the status of her complaint, requesting that management review the tapes from the store camera to confirm Plaintiff's complaint against Ms. Castonguay, for which Plaintiff's manager responded, "Oh they didn't have it;" and Defendants failed to investigate, discipline or provide any corrective action to Ms. Castonguay.

23.     Ms. Castonguay had a prior history of workplace aggression with other employees, but was allowed to retain her position and was not terminated. However, whenever

4

there were incidents as between Ms. Castonguay and others, if the employee was African American, the African American was found to be at fault and received different treatment by management than if the employee was white-skinned, whether Hispanic or Caucasian, in spite of the fact Ms. Castonguay caused and/or initiated the incident. In fact, Neiman Marcus' management attempted to explain away Ms. Castonguay and other white employee's actions under Neiman Marcus' conduct policy. When the action correlated with a white person, expressing that when a white person cursed, like Ms. Castonguay, it was a non-specific and generalized curse word. Yet, when a black person was only alleged to have cursed, this resulted in a harsher disciplinary action including termination because it was unacceptable cursing under the policy.

24.     On or about March 9, 2023, Ms. Castonguay initiated a verbal altercation with Plaintiff regarding the sale of merchandise, specifically, a jewelry item. Plaintiff complained to the assistant manager, Julia, for whom Plaintiff relied on her manager to escalate the complaint to Human Resources.

25.     Subsequently, however, Plaintiff communicated the incident to Susan Mitchell and asked to see Dustin in Human Resources so that she could file a complaint. Plaintiff decided to file a complaint with Dustin in Human Resources; and upon arriving to his office, he was out and would not return until the next day on March 10, 2023.

26.     Upon her arrival on March 10, 2023, Plaintiff communicated to Ms. Castonguay she was going to file a complaint against her with regards to her behavior, and on March 10, 2023, Marina Castonguay approached Plaintiff in a very intimidating manner and began to yell at Plaintiff, and as such Ms. Castonguay instigated another altercation with Plaintiff, this time in the ladies shoes stockroom regarding a delivery of a pair of shoes.

5

27.     Ms. Castonguay approached Plaintiff in an intimidating manner causing Plaintiff to feel threatened and humiliated.

28.     As the incident was occurring, some co-workers began to approach, but only two co-workers were actually present to witness the incident.

29.     Plaintiff left the stockroom and went to the sales floor.

30.     The manager, Susan Mitchell, approached after the situation was de-escalated and was informed about the altercation.

31.     After Ms. Mitchell arrived, Ms. Castonguay began yelling and screaming at Plaintiff manipulating the situation.

32.     Ms. Mitchell indicated to Ms. Castonguay that type of behavior was not going to be tolerated and in spite of her visibly being the perpetrator and the one yelling at Plaintiff in that moment, Ms. Castonguay was allowed to move into the office to have a discussion with Ms. Mitchell, thereby preempting Plaintiff's opportunity to first share her statement as the victim and file her formal complaint for the prior day's incident.

33.     Upon information and belief, Ms. Castonguay had prior altercations with other employees and Defendants failed to discipline Ms. Castonguay consistent with its policies and her actions.

34.     Plaintiff had no prior record of any workplace altercations or any other disciplinary actions.

35.     Notwithstanding, Plaintiff was suspended as a result of the altercation, pending an investigation, and was ultimately terminated on the basis of this incident.

36.     After almost 11 years of service, and an exemplary performance and conduct record, Defendants terminated Plaintiff alleging Plaintiff was the aggressor and initiator of the

6

altercation on the basis of Ms. Castonguay's untruthful statement, and faulty, incomplete statements and contradictory witness statements stating the opposite.

37.     Defendants failed to speak with all of the witnesses to the incident; faulty, incomplete and contradictory witness statements were compiled; and statements were obtained from witnesses who did not observe the actual incident, but were present only during the aftermath of the incident. Whereas, other statements, once received, if supported plaintiff and contradicted Ms. Castonguay's version of the incident, these statements in favor of plaintiff were not taken under consideration as part of the alleged investigation.

38.     Prior to this incident, Plaintiff had met or exceeded annual sales goals every year and performed at a high level for Neiman Marcus.

39.     Plaintiff was treated differently than similarly situated white employees, and more specifically, Ms. Castonguay, a white female who was much younger than Plaintiff.

40.     Plaintiff was denied unemployment benefits by Defendants, who upon information and belief, had approved unemployment insurance benefits for white employees who had engaged in conduct and/or performance much more egregious than that for which Plaintiff was accused to have engaged.

41.     Plaintiff's management perpetuated a culture of racially based unfairness as evidenced by the CEO's comments made just months earlier that were interpreted by many to be discriminatory, causing a "stir" among customers and employees.

42.     Marina Castonguay had been employed for three years, as compared to Plaintiff's eleven (11) years of employment.

43.     Marina Castonguay had prior incidents of workplace actions and prior outbursts but was only sent home, returned to work and not terminated.

7

44.     Plaintiff was not afforded any progressive disciplinary process, and Defendants failed to provide Plaintiff an adequate and thorough investigation.

45.     Plaintiff has been harmed both financially and emotionally by Defendants' actions.

46.     At all times throughout her employment, Plaintiff had positive customer experiences with customers, built rapport with customers and employees and no prior record of any outburst, cursing or other adverse conduct.

47.     Plaintiff had not been disciplined throughout her tenure and as of the time she was terminated, there was no documentation of any discipline during her tenure with Defendants.

## COUNT I:
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT: RACE DISCRIMINATION

48.     Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 47 above.

49.     From around August 2022 until on or about March 2023, Defendants engaged in unlawful employment practices in violation of Title VII of the Civil Rights Act, as amended.

50.     Plaintiff was treated differently than a similarly situated white employee, Marina Castonguay.

51.     Upon information and belief, black employees at Neiman Marcus were treated differently as a whole than white employees, as evidenced by the workplace culture and the incidents that followed, which became more pervasive over the last year of Plaintiff's employment, and upon information and belief, there is a disproportionate number of white luxury sales associates, management, and executives, at around 79%, than black, which are only 3%, respectively.

52. A younger, wealthier white focused retail strategy was reiterated in a tense political and racial climate reinforced by Neiman Marcus' CEO, Geoffroy van Raemdonck, whose comments drew fire just one month before Plaintiff's termination incident, with regards to being discriminatory, as class and wealth denominators correlate with disparate, or alternatively, intentional treatment on the basis of race.

53. Between February 2023 and March 2023, Plaintiff recalls having discussions with others, including customers, about the CEO's comment that was perceived to be discriminatory and what biases did this reinforce and translate to management.

54. Plaintiff was terminated for an altercation that was started and instigated by the white younger female, Ms. Castonguay.

55. Ms. Castonguay received no sustained discipline as a result of the incident.

56. Defendants failed or refused to adequately and fully investigate this matter in a fair and objective manner and relied on the statement of Ms. Castonguay, the white female aggressor over Plaintiff and non-white witnesses.

57. Defendants relied on Ms. Castonguay's version of events as opposed to Plaintiff and the legitimate witnesses to inform the decision.

58. The unequal application of its policies by Defendants and the practices complained of have deprived Plaintiff of equal employment opportunities and have otherwise adversely affected her status as an employee because of her race.

59. The practices complained of were intentional and conducted with malice or with reckless indifference to the federally protected rights of Plaintiff.

9

60.     As a direct and proximate result of Defendants' violation of Title VII, Plaintiff suffered actual damages including but not limited to back pay, front pay, losses in compensation, losses in benefits, emotional distress and loss of enjoyment of life.

## COUNT II:
## RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT, AS AMENDED ( "TITLE VII")

61.     Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 60 above.

62.     Beginning as early as August 2022, Defendants engaged in unlawful employment practices in violation of Title VII, by retaliating against Plaintiff for engaging in protected conduct.

63.     Plaintiff engaged in statutorily protected conduct when she inquired, raised concerns, and complained of discriminatory and harassing treatment by her co-worker Marina Castonguay.

64.     In March 2023, Defendants retaliated against Plaintiff by terminating Plaintiff after she complained of treatment by her white co-worker.

65.     The unequal application of its policies by Defendants and the practices complained of have deprived Plaintiff of equal employment opportunities and have otherwise adversely affected the terms and conditions of her employment.

66.     Defendants provided incorrect and/or false information to the authorities causing Plaintiff to be denied unemployment insurance benefits to prevent her from receiving unemployment benefits for which she was entitled and due.

67. Upon information and belief, Defendants failed to provide a neutral reference with regards to future employment inquiries for Plaintiff, causing a delay in Plaintiff becoming re-employed in a suitable and similar position.

68. These adverse actions were a direct result of Plaintiff having engaged in protected activity.

69. The practices complained of above are unlawful and in violation of Title VII of the Civil Rights Act, as amended. ("Title VII")

70. The practices complained of above have deprived Plaintiff equal employment opportunities and have otherwise adversely affected her status as an employee because of her engagement in protected activity.

71. Upon information and belief, the practices complained of above were intentional.

72. Upon information and belief, the practices complained of above were conducted with malice or with reckless indifference to the federally protected rights of Plaintiff.

73. As a direct and proximate result of Defendants' violation of Title VII, Plaintiff suffered actual damages including but not limited to back pay, front pay, losses in compensation and benefits, humiliation, emotional distress, and loss of enjoyment of life.

## COUNT III:
## VIOLATION OF TITLE VII: AGE DISCRIMINATION

74. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 73 above.

75. Plaintiff is an African American female over 40 years old.

76. Upon information and belief, Marina Castonguay is at least 20 years younger than Plaintiff.

77.     Ms. Castonguay has been harassing Plaintiff for months prior to Plaintiff's termination.

78.     Plaintiff complained about Ms. Castonguay's harassment; and said harassment continued after Plaintiff reported the harassment to store managers, during Plaintiff's employment and after Plaintiff was terminated.

79.     Upon information and belief, Ms. Castonguay has been involved in verbal altercations with other employees, had documented workplace incidents as against written policy and Defendants failed to discipline her.

80.     On or around March 10, 2023, Ms. Castonguay instigated an altercation with Plaintiff.

81.     Witnesses stated that Ms. Castonguay was the aggressor in this altercation and Plaintiff was only defending herself after appearing threatened.

82.     Defendants failed or refused to interview these witnesses in a thorough, non-retaliatory and objective manner and relied on the statement of Ms. Castonguay, the white female aggressor over Plaintiff and non-white witnesses.

83.     Defendants gave more favorable and preferential treatment to Ms. Castonguay because she was younger than Plaintiff.

84.     Ms. Castonguay continued to find ways to insult, engage in microaggressions, mock and harass Plaintiff on the basis of race and age, using Castonguay's capacity as a sales associate to do so when she would send multiple communications to Plaintiff, which continued post-termination ranging from December 2023 to February 19, 2024.

85.     The practices complained of above are unlawful and in violation of Title VII of the Civil Rights Act of 1964, as amended.

86. The practices complained of above have deprived Plaintiff of equal employment opportunities and have otherwise adversely affected her status as an employee because of her age. The practices complained of above were intentional.

87. The practices complained of above were conducted with malice or with reckless indifference to the federally protected rights of Plaintiff.

88. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered actual damages including but not limited to back pay, front pay, losses in compensation and benefits, humiliation, emotional distress, and loss of enjoyment of life.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

89. Plaintiff filed a timely EEOC charge with the Equal Employment Opportunity Commission, File Number: 430-2023-02729. The EEOC issued a Notice of Right-To-Sue Letter on or around January 9, 2024. Plaintiff is filing this action within ninety (90) days of receiving the Notice of Right-To-Sue. She has complied with all jurisdictional requirements and has exhausted administrative pre-requisites before initiating this action. (Exhibit A)

### PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff, seeks judgment against the Defendants as follows:

1. Enter a judgment against the Defendants and order Defendants to pay Plaintiff compensatory damages, lost benefits, and other economic losses in excess of an amount sum sufficient that subject matter jurisdiction is properly vested in the Superior Court division pursuant to N.C.G.S. § 7A-243; and

2. Award treble damages and punitive damages as against Defendants for their willful retaliatory conduct.

13

3. Award Plaintiff all reasonable costs and attorney's fees incurred in connection with this action;

4. Order Defendants to make Plaintiff whole by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including, but not limited to, front pay.

5. Order Defendants to make Plaintiff whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices describe above, in amounts to be determined at trial.

6. That the Plaintiff receive a trial by jury on all issues triable by jury;

7. For other such relief to which the Plaintiff may be entitled given the allegations herein, and for any such other relief as the Court may deem just and proper.

This the 10ᵗʰ day of March 2024.

Suzetta Calzada, PRO SE
6302 Chimney Bluff Rd.
Lancaster, SC 29720

14

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is the person of such age and discretion as to be competent to serve process, and has on this date served the foregoing Summons & Complaint in the above-captioned action upon all parties to this cause in the manner indicated below, as provided by the North Carolina Rules of Civil Procedure:

By depositing a copy hereof in a postpaid wrapper in a post office or official depository under the exclusive care and custody of the United States Postal Service, via Certified Mail, Return Receipt Requested, addressed as follows:

Defendant's Registered Agent/Counsel: _____
c/o:_____
Address:_____
City, State Zip _____

This the 11th day of April, 2024

Suzetta Calzada, PRO SE

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Charlotte District Office**
129 West Trade Street, Suite 400
Charlotte, NC 28202
(980) 296-1250
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 01/09/2024

**To:** Suzetta Calzada
6302 Chimney Bluff Rd
Lancaster, SC 29720

Charge No: 430-2023-02729

EEOC Representative and email:　　KYLE PFLAGER
Investigator
kyle.pflager@eeoc.gov

---

### DISMISSAL OF CHARGE

The EEOC has granted your request for a Notice of Right to Sue, and more than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 430-2023-02729.

On behalf of the Commission,

DN: cn=TaKeesha R. Washington, o=Equal
Employment Opportunity Commission,
ou=Charlotte District Office,
email=takeesha.washington@eeoc.gov,
c=US
Date: 2024.01.09 12:48:19 -05'00'

for

---

Elizabeth "Betsy" Rader
District Director

# STATE OF NORTH CAROLINA

_____Mecklenburg_____ County

File No.
24CV016311-590

In The General Court Of Justice
☐ District  ☒ Superior Court Division

| Name Of Plaintiff | |
| --- | --- |
| Suzetta Calzada | |

| Address | |
| --- | --- |
| 6302 Chimney Bluff Rd. | |

| City, State, Zip | | |
| --- | --- | --- |
| Lancaster, | SC | 29720 |

## CIVIL SUMMONS
☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)**

G.S. 1A-1, Rules 3 and 4

### VERSUS

| Name Of Defendant(s) | Date Original Summons Issued |
| --- | --- |
| Neiman Marcus Group, LLC fka Neiman Marcus Group, Inc. | |
| | Date(s) Subsequent Summons(es) Issued |
| Neiman Marcus Group, LTD. | |

**To Each Of The Defendant(s) Named Below:**

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
| --- | --- |
| Neiman Marcus Group LLC fka  Neiman Marcus Group, Inc. | Neiman Marcus Group, LTD |
| c/o CT Corporations Systems, Registered Agent | c/o CT Corporations Systems, Registered Agent |
| 160 Mine Lake Ct. Suite 200 | 160 Mine Lake Ct. Suite 200 |
| Raleigh,                          NC      27615 | Raleigh,                          NC      27615 |

⚠ **IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!**

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles!**

**Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!**

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1.  Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2.  File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff) | Date Issued 4/10/2024 | Time 3:48:47 pm ☐ AM ☐ PM |
| --- | --- | --- |
| Suzetta Calzada | Signature  /s/ Andrew Yeaman | |
| 6302 Chimney Bluff Rd. | | |
| Lancaster                          NC      29720 | ☒ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court | |

| ☐ ENDORSEMENT (ASSESS FEE) | Date Of Endorsement | Time ☐ AM ☐ PM |
| --- | --- | --- |
| This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | Signature | |
| | ☐ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** _Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration and, if so, what procedure is to be followed._

(Over)

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Charlotte District Office**
129 West Trade Street, Suite 400
Charlotte, NC 28202
(980) 296-1250
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
### (This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 01/09/2024

**To:** Suzetta Calzada
6302 Chimney Bluff Rd
Lancaster, SC 29720

Charge No: 430-2023-02729

EEOC Representative and email:    KYLE PFLAGER
Investigator
kyle.pflager@eeoc.gov

---

### DISMISSAL OF CHARGE

The EEOC has granted your request for a Notice of Right to Sue, and more than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 430-2023-02729.

On behalf of the Commission,

DN: cn=TaKeesha R. Washington, o=Equal
Employment Opportunity Commission,
ou=Charlotte District Office,
email=takeesha.washington@eeoc.gov,
C=US
Date: 2024.01.09 12:48:19 -05'00'    for

Elizabeth "Betsy" Rader
District Director

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is the person of such age and discretion as to be competent to serve process, and has on this date served the foregoing Summons & Complaint in the above-captioned action upon all parties to this cause in the manner indicated below, as provided by the North Carolina Rules of Civil Procedure:

By depositing a copy hereof in a postpaid wrapper in a post office or official depository under the exclusive care and custody of the United States Postal Service, via Certified Mail, Return Receipt Requested, addressed as follows:

Defendant's Registered Agent/Counsel: _____
c/o:_____
Address:_____
City, State Zip _____


This the 11th day of April, 2024

_____
Suzetta Calzada, PRO/SE

| | |
|---|---|
| STATE OF NORTH CAROLINA ) | IN THE GENERAL COURT OF JUSTICE |
| COUNTY OF MECKLENBURG ) | SUPERIOR COURT DIVISION |
| ) | _____CV_____ |
| ) | |
| SUZETTA CALZADA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | **COMPLAINT FOR DAMAGES AND** |
| ) | **DEMAND FOR JURY TRIAL** |
| v. ) | |
| ) | |
| NEIMAN MARCUS GROUP, LLC ) | |
| Formerly, The NEIMAN MARCUS ) | |
| GROUP, INC; and NEIMAN ) | |
| MARCUS GROUP, LTD. ) | |
| Defendants. ) | |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended, for

Defendants' violations of Title VII and to provide appropriate relief to Plaintiff Suzetta Calzada.

As alleged with greater particularity below, directly and/or in the alternative, Defendants violated

Title VII when they discriminated against Plaintiff based on race and retaliated against Plaintiff.

In addition, Defendants violated the Age Discrimination in Employment Act (ADEA) with their

practices, policies and actions when taken against and applied to Plaintiff Suzetta Calzada.

## JURISDICTION, VENUE AND PARTIES

1.      The employment practices alleged to be unlawful were committed within the

jurisdiction of Mecklenburg County, North Carolina.

2.      Plaintiff, Suzetta Calzada, is a Black female, who is expressly authorized to bring

this action whereby all facts alleged occurred in Mecklenburg County, North Carolina.

3.      At all relevant times, Defendants, a Texas Corporation, operated a chain of luxury

department stores in North Carolina, including Neiman Marcus located at South Park Mall, 4400

Sharon Rd. Charlotte, NC 28211 (the "Facility"). According to the requisite registries,

1

Defendants' Registered Agent is CT Corporation Systems located at 160 Mine Lake Ct. Suite 200, Raleigh, NC 27615.

4.     Upon information and belief, the company's operations are conducted through its wholly owned subsidiary, Defendant Neiman Marcus Group, LLC, formerly The Neiman Marcus Group, Inc.

5.     At all times pertinent to this action, Neiman Marcus Group, Ltd., has been the parent company of Neiman Marcus Group, LLC, formerly The Neiman Marcus Group, Inc., and thus exercised reasonable control over Neiman Marcus Group, LLC/Inc., for which both entities have existed for the benefit and interest of the other and thus has not operated as an independent entity of the other. With respect to the decisions pertinent to Plaintiff's causes of action herein, Defendants Neiman Marcus Group, LLC (formerly The Neiman Marcus Group, Inc.) and Neiman Marcus Group, Ltd. have operated and acted as a single entity. Neiman Marcus Group, LLC (formerly The Neiman Marcus Group, Inc.) and Neiman Marcus Group, Ltd. are sometimes collectively referred to hereafter as "the Corporate Defendants."

6.     As it relates to Plaintiff's Causes of Action, the Corporate Defendants are sued alternatively, in their individual capacities as separate legal entities, and collectively, and should be held jointly and severally liable for the wrongful conduct alleged herein. Notwithstanding, all facts as applicable to any particular cause of action and taken throughout Plaintiff's complaint shall apply to any and all cause(s) of action, as applicable, with regard to headings, as if said facts are fully and actually set forth in each section hereto.

7.     At all relevant times, Defendants have continuously done business in the State of North Carolina and in Mecklenburg County, North Carolina and have continuously maintained at least fifteen (15) employees.

2

8.      Joint venture liability with respect to the Defendants and Defendants' predecessors in interest exists based on the nature of their relationship, joint venture(s) and actions.

9.      Upon information and belief, contractual obligations exist as between the Corporate Defendants, each of which acted in furtherance of protecting and advancing its interest.

10.     There is a sufficient nexus between Corporate Defendants to establish proper jurisdiction and liability on the claims herein and was Plaintiff's employer.

11.     Upon information and belief, Corporate Defendants through their actions, a web of agreements and/or corporate structures with various affiliated and unaffiliated services providers, shared ultimate responsibility and authority to exert control over Plaintiff and to direct the pay practices, employment policies and illegal discharge of Plaintiff as challenged and alleged in this Complaint.

12.     At all times pertinent to this action, Defendants have been a covered entity under Title VII.

13.     Defendants are vicariously liable for the actions of its employees, officers, management and other of its agents.

14.     Plaintiff seeks damages in sum sufficient that subject matter is properly vested in the Superior Court Division pursuant to N.C.G.S. § 7A-243.

## ADMINISTRATIVE PROCEDURES

15.     More than thirty (30) days prior to the institution of this lawsuit, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("Commission") alleging violations of Title VII and the ADEA by Defendants.

3

16.     On or about January 9, 2024, the Commission issued a right to sue letter to Plaintiff.

17.     All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

18.     Plaintiff began employment with Defendants on or about May 29, 2012 as a customer sales representative in the New Jersey location and transferred to the Charlotte Neiman Marcus in 2013, where she performed well and excelled as a sales professional until she was wrongfully terminated on or around March 14, 2023.

19.     Plaintiff is an African American female over 40 years old.

20.     Upon information and belief, Plaintiff was the only African American luxury sales representative in her department and was at least twenty (20) years older than Ms. Castonguay, a white female.

21.     In August 2022, Plaintiff, began being harassed by a younger white female co-worker, Marina Castonguay.

22.     Plaintiff already believed she was being treated less favorably than her white female co-worker when she reported this incident to management. And, management failed to investigate Plaintiff's complaint. Subsequently, two weeks after the incident, Plaintiff further inquired about the status of her complaint, requesting that management review the tapes from the store camera to confirm Plaintiff's complaint against Ms. Castonguay, for which Plaintiff's manager responded, "Oh they didn't have it;" and Defendants failed to investigate, discipline or provide any corrective action to Ms. Castonguay.

23.     Ms. Castonguay had a prior history of workplace aggression with other employees, but was allowed to retain her position and was not terminated. However, whenever

4

there were incidents as between Ms. Castonguay and others, if the employee was African American, the African American was found to be at fault and received different treatment by management than if the employee was white-skinned, whether Hispanic or Caucasian, in spite of the fact Ms. Castonguay caused and/or initiated the incident. In fact, Neiman Marcus' management attempted to explain away Ms. Castonguay and other white employee's actions under Neiman Marcus' conduct policy. When the action correlated with a white person, expressing that when a white person cursed, like Ms. Castonguay, it was a non-specific and generalized curse word. Yet, when a black person was only alleged to have cursed, this resulted in a harsher disciplinary action including termination because it was unacceptable cursing under the policy.

24.    On or about March 9, 2023, Ms. Castonguay initiated a verbal altercation with Plaintiff regarding the sale of merchandise, specifically, a jewelry item.  Plaintiff complained to the assistant manager, Julia, for whom Plaintiff relied on her manager to escalate the complaint to Human Resources.

25.    Subsequently, however, Plaintiff communicated the incident to Susan Mitchell and asked to see Dustin in Human Resources so that she could file a complaint. Plaintiff decided to file a complaint with Dustin in Human Resources; and upon arriving to his office, he was out and would not return until the next day on March 10, 2023.

26.    Upon her arrival on March 10, 2023, Plaintiff communicated to Ms. Castonguay she was going to file a complaint against her with regards to her behavior, and on March 10, 2023, Marina Castonguay approached Plaintiff in a very intimidating manner and began to yell at Plaintiff, and as such Ms. Castonguay instigated another altercation with Plaintiff, this time in the ladies shoes stockroom regarding a delivery of a pair of shoes.

27.     Ms. Castonguay approached Plaintiff in an intimidating manner causing Plaintiff to feel threatened and humiliated.

28.     As the incident was occurring, some co-workers began to approach, but only two co-workers were actually present to witness the incident.

29.     Plaintiff left the stockroom and went to the sales floor.

30.     The manager, Susan Mitchell, approached after the situation was de-escalated and was informed about the altercation.

31.     After Ms. Mitchell arrived, Ms. Castonguay began yelling and screaming at Plaintiff manipulating the situation.

32.     Ms. Mitchell indicated to Ms. Castonguay that type of behavior was not going to be tolerated and in spite of her visibly being the perpetrator and the one yelling at Plaintiff in that moment, Ms. Castonguay was allowed to move into the office to have a discussion with Ms. Mitchell, thereby preempting Plaintiff's opportunity to first share her statement as the victim and file her formal complaint for the prior day's incident.

33.     Upon information and belief, Ms. Castonguay had prior altercations with other employees and Defendants failed to discipline Ms. Castonguay consistent with its policies and her actions.

34.     Plaintiff had no prior record of any workplace altercations or any other disciplinary actions.

35.     Notwithstanding, Plaintiff was suspended as a result of the altercation, pending an investigation, and was ultimately terminated on the basis of this incident.

36.     After almost 11 years of service, and an exemplary performance and conduct record, Defendants terminated Plaintiff alleging Plaintiff was the aggressor and initiator of the

6

altercation on the basis of Ms. Castonguay's untruthful statement, and faulty, incomplete statements and contradictory witness statements stating the opposite.

37.     Defendants failed to speak with all of the witnesses to the incident; faulty, incomplete and contradictory witness statements were compiled; and statements were obtained from witnesses who did not observe the actual incident, but were present only during the aftermath of the incident.  Whereas, other statements, once received, if supported plaintiff and contradicted Ms. Castonguay's version of the incident, these statements in favor of plaintiff were not taken under consideration as part of the alleged investigation.

38.     Prior to this incident, Plaintiff had met or exceeded annual sales goals every year and performed at a high level for Neiman Marcus.

39.     Plaintiff was treated differently than similarly situated white employees, and more specifically, Ms. Castonguay, a white female who was much younger than Plaintiff.

40.     Plaintiff was denied unemployment benefits by Defendants, who upon information and belief, had approved unemployment insurance benefits for white employees who had engaged in conduct and/or performance much more egregious than that for which Plaintiff was accused to have engaged.

41.     Plaintiff's management perpetuated a culture of racially based unfairness as evidenced by the CEO's comments made just months earlier that were interpreted by many to be discriminatory, causing a "stir" among customers and employees.

42.     Marina Castonguay had been employed for three years, as compared to Plaintiff's eleven (11) years of employment.

43.     Marina Castonguay had prior incidents of workplace actions and prior outbursts but was only sent home, returned to work and not terminated.

7

44. Plaintiff was not afforded any progressive disciplinary process, and Defendants failed to provide Plaintiff an adequate and thorough investigation.

45. Plaintiff has been harmed both financially and emotionally by Defendants' actions.

46. At all times throughout her employment, Plaintiff had positive customer experiences with customers, built rapport with customers and employees and no prior record of any outburst, cursing or other adverse conduct.

47. Plaintiff had not been disciplined throughout her tenure and as of the time she was terminated, there was no documentation of any discipline during her tenure with Defendants.

## COUNT I:
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT: RACE DISCRIMINATION

48. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 47 above.

49. From around August 2022 until on or about March 2023, Defendants engaged in unlawful employment practices in violation of Title VII of the Civil Rights Act, as amended.

50. Plaintiff was treated differently than a similarly situated white employee, Marina Castonguay.

51. Upon information and belief, black employees at Neiman Marcus were treated differently as a whole than white employees, as evidenced by the workplace culture and the incidents that followed, which became more pervasive over the last year of Plaintiff's employment, and upon information and belief, there is a disproportionate number of white luxury sales associates, management, and executives, at around 79%, than black, which are only 3%, respectively.

8

52.     A younger, wealthier white focused retail strategy was reiterated in a tense political and racial climate reinforced by Neiman Marcus' CEO, Geoffroy van Raemdonck, whose comments drew fire just one month before Plaintiff's termination incident, with regards to being discriminatory, as class and wealth denominators correlate with disparate, or alternatively, intentional treatment on the basis of race.

53.     Between February 2023 and March 2023, Plaintiff recalls having discussions with others, including customers, about the CEO's comment that was perceived to be discriminatory and what biases did this reinforce and translate to management.

54.     Plaintiff was terminated for an altercation that was started and instigated by the white younger female, Ms. Castonguay.

55.     Ms. Castonguay received no sustained discipline as a result of the incident.

56.     Defendants failed or refused to adequately and fully investigate this matter in a fair and objective manner and relied on the statement of Ms. Castonguay, the white female aggressor over Plaintiff and non-white witnesses.

57.     Defendants relied on Ms. Castonguay's version of events as opposed to Plaintiff and the legitimate witnesses to inform the decision.

58.     The unequal application of its policies by Defendants and the practices complained of have deprived Plaintiff of equal employment opportunities and have otherwise adversely affected her status as an employee because of her race.

59.     The practices complained of were intentional and conducted with malice or with reckless indifference to the federally protected rights of Plaintiff.

9

60.     As a direct and proximate result of Defendants' violation of Title VII, Plaintiff

suffered actual damages including but not limited to back pay, front pay, losses in compensation,

losses in benefits, emotional distress and loss of enjoyment of life.


### COUNT II:
### RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT, AS AMENDED ( "TITLE VII")

61.     Plaintiff realleges and incorporates by reference the allegations set forth in

paragraphs 1 through 60 above.

62.     Beginning as early as August 2022, Defendants engaged in unlawful employment

practices in violation of Title VII, by retaliating against Plaintiff for engaging in protected

conduct.

63.     Plaintiff engaged in statutorily protected conduct when she inquired, raised

concerns, and complained of discriminatory and harassing treatment by her co-worker Marina

Castonguay.

64.     In March 2023, Defendants retaliated against Plaintiff by terminating Plaintiff

after she complained of treatment by her white co-worker.

65.     The unequal application of its policies by Defendants and the practices

complained of have deprived Plaintiff of equal employment opportunities and have otherwise

adversely affected the terms and conditions of her employment.

66.     Defendants provided incorrect and/or false information to the authorities causing

Plaintiff to be denied unemployment insurance benefits to prevent her from receiving

unemployment benefits for which she was entitled and due.


10

67.     Upon information and belief, Defendants failed to provide a neutral reference with regards to future employment inquiries for Plaintiff, causing a delay in Plaintiff becoming re-employed in a suitable and similar position.

68.     These adverse actions were a direct result of Plaintiff having engaged in protected activity.

69.     The practices complained of above are unlawful and in violation of Title VII of the Civil Rights Act, as amended. ("Title VII")

70.     The practices complained of above have deprived Plaintiff equal employment opportunities and have otherwise adversely affected her status as an employee because of her engagement in protected activity.

71.     Upon information and belief, the practices complained of above were intentional.

72.     Upon information and belief, the practices complained of above were conducted with malice or with reckless indifference to the federally protected rights of Plaintiff.

73.     As a direct and proximate result of Defendants' violation of Title VII, Plaintiff suffered actual damages including but not limited to back pay, front pay, losses in compensation and benefits, humiliation, emotional distress, and loss of enjoyment of life.

**COUNT III:**
**VIOLATION OF TITLE VII: AGE DISCRIMINATION**

74.     Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 73 above.

75.     Plaintiff is an African American female over 40 years old.

76.     Upon information and belief, Marina Castonguay is at least 20 years younger than Plaintiff.

11

77.     Ms. Castonguay has been harassing Plaintiff for months prior to Plaintiff's termination.

78.     Plaintiff complained about Ms. Castonguay's harassment; and said harassment continued after Plaintiff reported the harassment to store managers, during Plaintiff's employment and after Plaintiff was terminated.

79.     Upon information and belief, Ms. Castonguay has been involved in verbal altercations with other employees, had documented workplace incidents as against written policy and Defendants failed to discipline her.

80.     On or around March 10, 2023, Ms. Castonguay instigated an altercation with Plaintiff.

81.     Witnesses stated that Ms. Castonguay was the aggressor in this altercation and Plaintiff was only defending herself after appearing threatened.

82.     Defendants failed or refused to interview these witnesses in a thorough, non-retaliatory and objective manner and relied on the statement of Ms. Castonguay, the white female aggressor over Plaintiff and non-white witnesses.

83.     Defendants gave more favorable and preferential treatment to Ms. Castonguay because she was younger than Plaintiff.

84.     Ms. Castonguay continued to find ways to insult, engage in microaggressions, mock and harass Plaintiff on the basis of race and age, using Castonguay's capacity as a sales associate to do so when she would send multiple communications to Plaintiff, which continued post-termination ranging from December 2023 to February 19, 2024.

85.     The practices complained of above are unlawful and in violation of Title VII of the Civil Rights Act of 1964, as amended.

12

86. The practices complained of above have deprived Plaintiff of equal employment opportunities and have otherwise adversely affected her status as an employee because of her age. The practices complained of above were intentional.

87. The practices complained of above were conducted with malice or with reckless indifference to the federally protected rights of Plaintiff.

88. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered actual damages including but not limited to back pay, front pay, losses in compensation and benefits, humiliation, emotional distress, and loss of enjoyment of life.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

89. Plaintiff filed a timely EEOC charge with the Equal Employment Opportunity Commission, File Number: 430-2023-02729. The EEOC issued a Notice of Right-To-Sue Letter on or around January 9, 2024. Plaintiff is filing this action within ninety (90) days of receiving the Notice of Right-To-Sue. She has complied with all jurisdictional requirements and has exhausted administrative pre-requisites before initiating this action. (Exhibit A)

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff, seeks judgment against the Defendants as follows:

1. Enter a judgment against the Defendants and order Defendants to pay Plaintiff compensatory damages, lost benefits, and other economic losses in excess of an amount sum sufficient that subject matter jurisdiction is properly vested in the Superior Court division pursuant to N.C.G.S. § 7A-243; and

2. Award treble damages and punitive damages as against Defendants for their willful retaliatory conduct.

13

3.    Award Plaintiff all reasonable costs and attorney's fees incurred in connection with this action;

4.    Order Defendants to make Plaintiff whole by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including, but not limited to, front pay.

5.`    Order Defendants to make Plaintiff whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices describe above, in amounts to be determined at trial.

6.    That the Plaintiff receive a trial by jury on all issues triable by jury;

7.    For other such relief to which the Plaintiff may be entitled given the allegations herein, and for any such other relief as the Court may deem just and proper.


This the 10th day of March 2024.

Suzetta Calzada, PRO SE
6302 Chimney Bluff Rd.
Lancaster, SC 29720

14