# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:24-CV-00494-MOC-SCR

| | |
|---|---|
| SUZETTA CALZADA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| NEIMAN MARCUS GROUP, LLC, et. al., | ) |
| | ) |
| | ) |
| Defendants. | ) |

**THIS MATTER** is before the Court on Defendants' "Motion to Compel Arbitration" (Doc. No. 6), as well as the parties' briefs and exhibits. (Doc. Nos. 6-1, 7, 16 & 17).

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and the Motion is now ripe for the Court's consideration.

Having fully considered the arguments, the record and the applicable authority, Defendants' Motion to Compel Arbitration is <u>granted</u>, and this action is <u>stayed</u> pending arbitration.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On April 10, 2024, <u>pro se</u> Plaintiff filed this lawsuit against Defendants in Mecklenburg County Superior Court alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 <u>et seq.</u>, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e <u>et seq.</u> (Compl., Doc. No. 1-2 at 3). Plaintiff alleges that she is an African American female over 40 years of age and that she was employed by Defendants from May 29, 2012, until she was "wrongfully terminated" on March 14, 2023. <u>Id.</u> ¶¶ 18-19. Plaintiff alleges she was harassed by a younger, white female co-worker, and that Plaintiff's termination followed

a "verbal altercation" instigated by the same co-worker. Id. ¶¶ 21-30. Plaintiff contends that Defendants did not adequately investigate or otherwise respond to this event, and concluded erroneously that she was the "aggressor and initiator" of the altercation. Id. ¶¶ 22, 31-37. Plaintiff alleges this decision was the product of unlawful race and age discrimination and retaliation. Id. ¶¶ 48-88.

On May 22, 2024, Defendants removed the state court action to the United States District Court for the Western District of North Carolina alleging the existence of both federal question and diversity subject matter jurisdiction. (Doc. No. 1 at 2-5). Removal has not been challenged and appears proper.

Defendants filed a Motion to Compel Arbitration (Doc. No. 6) and a supporting brief. (Doc. No. 7). Attachments to those filings establish that in association with her hiring and onboarding process, Plaintiff was presented with an arbitration agreement (the "Arbitration Agreement") (Ex. A to Motion – Declaration of Melinda L. Copeland, Doc. No. 6-1 at ¶ 4 and Declaration Ex. 1). Plaintiff signed and agreed to the Arbitration Agreement on May 30, 2012, at the beginning of her employment. Id.

In January 2013, Defendants published updated versions of their Associate Handbook, Code of Conduct, and Arbitration Agreement to all employees. (Id. at ¶¶ 5-6 and Exs. 2-5). Defendants advised all employees that their acknowledgment of these documents was a condition of employment. (Id. at Ex. 2). Defendants also advised all employees that copies of the aforementioned documents, including the Arbitration Agreement, were available for review in both hard copy form and through the "NMGPS" online portal. (Id. at ¶ 6 and Ex. 2). Defendants provided all employees with instructions on how to access their secure, password-protected NMGPS online account using a unique username and password. (Id. at ¶¶ 6-7 and Ex. 3). From

there, the employee could navigate to the "Required Training" section on the home screen within the NMGPS portal and locate the electronic link for "NMG Company Documents – e-Signature Required – January 2013," which provided the employee electronic access to the Arbitration Agreement. (Id. at ¶ 8 and Ex. 3).

In accordance with the instructions provided, on February 7, 2013, at 9:10 a.m., Plaintiff electronically agreed to the mandatory arbitration acknowledgement form (the "Arbitration Acknowledgment"). (Id. at ¶¶ 10-12 and Exs. 6-7). Plaintiff specifically acknowledged and affirmed (i) that she had an opportunity to review the Arbitration Agreement, (ii) that "that arbitration is the exclusive means of resolving any and all disputes or claims [she] or the Company may have against each other, arising out of or connected in any way with my employment with NMG, in lieu of a judge or jury trial", and (iii) that ". . . IF [SHE] ACCEPT[S] OR CONTINUE[S] EMPLOYMENT WITH THE COMPANY, [SHE IS] DEEMED TO HAVE ACCEPTED THE MANDATORY ARBITRATION PROGRAM." (Id. at Ex. 6 (emphasis in original)).

On the cover page of the Arbitration Agreement, the following statement is displayed in all-caps font:

> THIS AGREEMENT FOR MANDATORY ARBITRATION IS NOT OPTIONAL. IT IS MANDATORY AND A CONDITION AND TERM OF YOUR EMPLOYMENT IF YOU ARE OR CONTINUE TO BE AN EMPLOYEE ON OR AFTER MARCH 1, 2013, WHICH IS THE EFFECTIVE DATE OF THIS AGREEMENT (THE "EFFECTIVE DATE"), YOU ARE DEEMED TO HAVE ACCEPTED AND AGREED TO THE MANDATORY ARBITRATION AGREEMENT BY COMING TO WORK AFTER THAT DATE. IF YOU ACCEPT EMPLOYMENT WITH THE COMPANY AFTER THE EFFECTIVE DATE, YOU ARE DEEMED TO HAVE ACCEPTED AND AGREED TO THIS MANDATORY ARBITRATION AGREEMENT BY ACCEPTING A JOB AT THE COMPANY.

(Id. at Ex. 4).

In terms of scope, the Arbitration Agreement provides that "all Disputes" between the parties are subject to arbitration:

> 1. Scope. The parties agree that **all Disputes shall be resolved exclusively through binding arbitration** in accordance with the terms, conditions, and procedures of this Agreement…
>    * * *
> 3. Disputes. The parties agree that this Agreement covers any dispute(s) involving (i) the formation, validity, enforceability, construction or application of any of the terms, covenants, or conditions of this Agreement; (ii) **an allegation that any adverse employment action was based on discrimination or harassment because of Employee's race, color, gender, sexual orientation, sexual identity, age, religion, national origin, disability, mental or physical handicap, genetic information, FMLA leave or any other legally protected status arising under any federal, state or local law or regulation; (iii) claims related to, or arising out of, the employment relationship between Employee and NMG; and/or Employee's separation from employment with NMG, including but not limited to any termination, retaliation or constructive discharge claims…**

(Id. at Ex. 4, §§ 1 and 3) (emphasis added).

The Agreement also contains a broad delegation clause, delegating all questions of arbitrability to the arbitrator:

> 7. Arbitrator's Authority. The **Arbitrator**, and not any federal, state, or local court or agency, **shall have exclusive authority to resolve any claim or Dispute relating to the interpretation, applicability, enforceability or formation of this Agreement** including, but not limited to, any claim that all or any part of this Agreement is void or voidable.

(Id. at Ex. 4, § 7) (emphasis added).

The Arbitration Agreement's governing law provision provides:

> This Agreement shall be governed by, construed under and enforced in accordance with the Federal Arbitration Act, 9 U.S.C. § 1 et. seq. ("FAA"). Any grounds, claims, or defenses that may exist at law or in equity to challenge the validity or enforceability of the Arbitration Agreement, including fraud, duress or unconscionability, as provided under Section 2 of the FAA **shall be determined by the Arbitrator in accordance with Texas law**.

(Id. at Ex. 4, p. 5 § 10) (emphasis added).

In her Response to the Motion to Compel Arbitration, Plaintiff expresses her preference for mediation over arbitration. (Doc. No. 16). She does not offer any argument that arbitration is unwarranted here, stating only that she believes mediation is "more appropriate." Id. Her Response to Defendants' Motion states in its entirety:

> I, Suzetta Calzada, pro se Plaintiff in the above-referenced case, would like to formally express my preference for mediation over arbitration regarding the ongoing dispute with Neiman Marcus Group, LLC. While I understand the defendants' position in seeking to compel arbitration, I believe that mediation is a more appropriate forum for resolving this matter.
> Mediation would allow both parties the opportunity to engage in a more collaborative and less adversarial process, where we could work together with a neutral third party to explore mutually acceptable solutions. It also provides greater flexibility and could lead to a resolution that considers the unique aspects of this case.
> I appreciate the Court's consideration of my request and remain hopeful for an opportunity to pursue mediation as a resolution path.

Id.

Defendants' Motion is ripe for determination.

## II. DISCUSSION

The Federal Arbitration Act ("FAA") provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ." 9 U.S.C. § 2. The FAA requires courts to stay proceedings and compel arbitration in the event of a refusal to comply with a valid agreement to arbitrate. 9 U.S.C. § 3; Smith v. Spizzirri, 144 S. Ct. 1173, 1173 (2024). The Supreme Court has described the FAA as a "federal policy favoring arbitration." AT&T Mobility, LLC v. Concepcion, 563 U.S. 333, 339 (2011) (citation omitted). "[C]ourts must rigorously enforce arbitration agreements according to their terms." Am. Exp. Co. v. Italian Colors Rest., 570 U.S. 228, 233 (2013) (internal quotations omitted). When reviewing a motion to compel arbitration, courts construe the record in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. Forshaw

Indus., Inc. v. Insurco, Ltd., 2 F. Supp. 3d 772, 785 (W.D.N.C. 2014). "The burden is on the defendant to establish the existence of a binding contract to arbitrate the dispute." Hodge v. Toyota Motor Credit Corp., No. 1:22-CV-00001-MR-WCM, 2022 WL 2195022, at *2 (W.D.N.C. June 17, 2022) (quoting Rowland v. Sandy Morris Fin. & Estate Planning Servs. LLC, 993 F.3d 253, 258 (4th Cir. 2021)).

Here, the FAA's applicability is undisputed. A party seeking to compel claims to arbitration under the FAA must establish that: "(1) a dispute exists between the parties; (2) the dispute falls within the scope of a written, valid agreement that includes an arbitration provision; (3) the parties' agreement relates to interstate or foreign commerce; and (4) the opposing party has failed or refused to arbitrate the dispute at hand." Amos v. Amazon Logistics, Inc., 74 F.4th 591, 595 (4th Cir. 2023) (citing Adkins v. Lab Ready, Inc., 303 F.3d 496, 500-01 (4th Cir. 1971)). Here it is evident, and Plaintiff does not contest, that a dispute exists between the parties, that there is a written arbitration agreement which purports to cover the dispute and relates to interstate or foreign commerce, and that Plaintiff has declined to arbitrate the dispute to date.

Moreover, in some instances, such as here, the parties' contract divests the court of its power to determine the threshold issue of arbitrability by way of a delegation clause which gives the arbitrator the primary power to rule on the arbitrability. Rent–A–Center, West, Inc. v. Jackson, 561 U.S. 63, 68-9 (2010) (citation omitted) (recognizing "that parties can agree to arbitrate 'gateway' questions of 'arbitrability' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."). When there is a valid delegation clause, as exists in this case, the Court is required to refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues. Henry Schein, Inc. v. Archer & White Sales, Inc., 586 U.S. 63, 65 (2019) ("When the parties' contract delegates the arbitrability question to an

arbitrator, the courts must respect the parties' decision as embodied in the contract."); (Doc. No. 6-1, Ex. 4, § 7).

"The Fourth Circuit has routinely recognized this principle, explaining that questions of arbitrability will be delegated to the arbitrator when the agreement 'clearly and unmistakably provide[s] that the arbitrator shall determine what disputes the parties agreed to arbitrate.'" Brookdale Senior Living Inc. v. Weir, No. 3:20CV293-GCM, 2021 WL 3464966, at *3 (W.D.N.C. Aug. 6, 2021) (quoting Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union, 665 F.3d 96, 102 (4th Cir. 2012)). "[A] delegation provision that gives an arbitrator the authority to resolve disputes relating to the 'enforceability,' 'validity,' or 'applicability' of an arbitration agreement constitutes clear and unmistakable evidence that the parties intended to arbitrate arbitrability." Id. (citations omitted).

Considering all of this, the Court grants Defendants' Motion to Compel Arbitration and stays this matter pending arbitration.

### III. ORDER

**IT IS, THEREFORE, ORDERED that:**

1. Defendants' Motion to Compel Arbitration (Doc. No. 6) is **GRANTED**. The parties are **ORDERED** to submit this matter to arbitration in accordance with the Arbitration Agreement.

2. This matter is **STAYED** pending the outcome of the parties' binding arbitration. See 9 U.S.C. § 3. It is further **ORDERED** that the parties shall file a status report within 90 days of this Order, and each 90 days thereafter, until the conclusion of the arbitration.

3. The Clerk shall send copies of this Order to pro se Plaintiff, to counsel for Defendants, and to the Honorable Max O. Cogburn, Jr.

**SO ORDERED**.

Signed: November 13, 2024

_____
Susan C. Rodriguez
United States Magistrate Judge